NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-647                                          Appeals Court

COMMONWEALTH  vs.  ROBERT ALBERT.


No. 24-P-647.

Bristol.     February 6, 2026. – July 1, 2026.

Present:  Sacks, Hodgens, & Toone, JJ.


Rape.  Child Abuse.  Indecent Assault and Battery.  Rape-Shield
    Statute.  Evidence, First complaint, Motive.  Practice,
    Criminal, Instructions to jury.  Evidence, Relevancy and
    materiality.  Practice, Criminal, Defendant's decision not
    to testify.



    Indictments found and returned in the Superior Court
Department on January 23, 2020.

    The cases were tried before Renee P. Dupuis, J.


    James P. McKenna for the defendant.
    Rachel J. Eisenhaure, Assistant District Attorney, for the
Commonwealth.


    TOONE, J.  After a Superior Court jury trial, the

defendant, Robert Albert, was convicted of numerous counts of

rape of a child and related offenses against his daughter, Britt

(a pseudonym).[1]  The primary issue on appeal is whether the judge abused her discretion by admitting one of Britt's diary entries as first complaint evidence, in violation of Commonwealth v. King, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006).  See Commonwealth v. Aviles, 461 Mass. 60, 73 (2011).  Because a person's uncommunicated thoughts in a diary do not constitute a complaint, we conclude that it was error to allow Britt's diary in evidence under the first complaint doctrine.  See Chan v. Chen, 70 Mass. App. Ct. 79, 84 (2007) (review for abuse of discretion encompasses errors of law).  As we cannot say that no prejudice occurred as a result of this error, see Commonwealth v. Arana, 453 Mass. 214, 228 (2009), citing Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994), we vacate the judgments of conviction and remand for a new trial.

Background.  1.  Motion in limine to admit first complaint evidence.  The judge considered potential first complaint evidence through motions in limine and ultimately a voir dire of

---

[1] The defendant was charged with one count of rape of a child aggravated by a five-year age difference, one count of rape of a child aggravated by a ten-year age difference, three counts of rape of a child, and two counts of indecent assault and battery on a person age fourteen or over.  (Although the defendant remained more than ten years older than Britt at all times, aggravated rape under G. L. c. 265, § 23A, requires only a five-year age difference when the victim is under twelve years of age, but a ten-year age difference when the victim is from twelve to sixteen years of age.)  One count of rape of a child was dismissed during trial as duplicative; the defendant was convicted of the remaining charges.

Britt.  The indictments alleged that the defendant sexually abused Britt between June 2013 (when she was ten) and September 2019 (when she was sixteen).  In mid-November 2019, Britt disclosed the abuse to her older sister Margot (a pseudonym), to whom Britt was close despite their eleven-year age difference.  Before the 2023 trial, the Commonwealth filed a motion in limine to admit Britt's disclosure to Margot as first complaint evidence.

The defendant then notified the Commonwealth that a witness might suggest Britt and Margot had fabricated the allegations, motivated by Britt's desire to move out of the defendant's house and into Margot's house to be freer to spend time with a boyfriend Britt had met just before the disclosure.  In response, the Commonwealth changed course and amended its motion in limine to include, in addition, an undated five-page diary entry in which Britt described an incident of abuse by the defendant.  The Commonwealth sought to admit the diary entry as both first complaint evidence and a prior consistent statement to rehabilitate Britt if, as anticipated, the defendant argued that she had a motive to lie when she disclosed the abuse to Margot.  See Mass. G. Evid. § 613(b)(2) (2023).

The defendant opposed admission of the diary entry on the ground that it could not be shown Britt wrote it before making her disclosure to Margot.  At a voir dire, Britt testified that

she wrote the entry in August or September of 2019, before her November disclosure. After considering arguments from counsel, the judge found the diary entry admissible as the first complaint, adding that she would instruct jurors on the first complaint doctrine when the evidence was offered and again in the final charge.

2. Trial. The Commonwealth's main trial witnesses were Britt and Margot. Britt testified that the defendant sexually abused her beginning when she was in the fifth grade, often as a condition of her being able to attend events or to get spending money from the defendant. The abuse continued until the start of her junior year of high school, in August or September of 2019, when she was sixteen and the last incident occurred. It was that incident that Britt wrote about in her diary the following day.

A copy of the complete, narrative diary entry was then admitted in evidence over the defendant's objection. At this point, and again later in the final charge, the judge gave a limiting instruction. See King, 445 Mass. at 247-248. Both times, the judge modified the standard instruction: instead of telling the jury that "we allow testimony by one person the complainant told of the alleged assault," id. at 247, the judge instructed the jury that "we allow evidence of the first occasion the complainant told of the alleged assault." The

judge further instructed the jury that they could consider Britt's diary entry for the purpose of "establish[ing] the circumstances in which the complainant first reported the alleged offense," and also that they could consider the "length of time between the alleged crime and the report of the complaint" as a factor in evaluating Britt's testimony. The diary entry described the defendant's coming into Britt's bedroom, sliding his hand up her leg and eventually into her shirt, unbuckling his pants, asking if he could "lick it," and trying to unbutton her pants. Britt read the entry to the jury verbatim and affirmed that its account of the defendant's alleged assault was accurate.

Britt then testified that, one day in November 2019, she went to a park to meet a boy with whom she had been exchanging text messages and whom she would soon begin dating. She lost track of time until her younger brother called her to say that the defendant was angry with both of them for not having come home for dinner. Britt then learned that her brother was going to be punished, but that she was not; she realized from this disparate treatment that the defendant "wanted me to keep his little secret," and she "got mad." Britt then went to stay with Margot, who lived nearby with her husband and children. Britt never returned to the defendant's home. The police later retrieved the diary, but Britt had no access to it until the day

she testified.  The Commonwealth elicited no testimony from Britt about her disclosure to Margot, although the defendant asked about it on cross-examination.

Margot, for her part, also testified to the circumstances of Britt's coming to stay at her house, but she, too, did not testify about Britt's disclosure until the defendant asked about it on cross-examination.  The Commonwealth also called a witness who testified that, in mid-November 2019, as a police officer, she had helped execute a warrant to search the defendant's home for a diary, which was recovered.

The theory of the defense, advanced through cross-examination and argument, was that Britt fabricated the allegations because she wanted to be free of the strict rules that the defendant enforced in his home; to be able to spend time with her new boyfriend; and to emulate Margot, who had left their father's home at a young age to live independently.  The defendant cross-examined Britt about when she made various entries in her diary, why she had crossed out the dates on others, whether it was true that she "pride[d] [her]self as a little bit of a writer" and "like[d] to write stories," and whether she had fabricated notes to excuse her absences from school.  The defendant called as witnesses his then fiancée, his sister, and his estranged wife, who all testified that they

lived in the defendant's home at various times and never saw him acting improperly toward Britt. The defendant did not testify.

Discussion. 1. First complaint evidence. The key issue is whether Britt's diary entry was improperly admitted as first complaint evidence. We conclude that it was.

The first complaint doctrine is an exception to the usual rule of evidence that "a prior statement of a witness that is merely repetitive of the witness's trial testimony is not admissible." King, 445 Mass. at 229. See Aviles, 461 Mass. at 73 (describing doctrine as "a body of governing principles to guide a trial judge on the admissibility of first complaint evidence"). The goals of the first complaint doctrine are to "refute any false inference that silence is evidence of a lack of credibility on the part of [sexual assault] complainants, . . . and to give the jury as complete a picture as possible of how the accusation of sexual assault first arose." Aviles, supra at 72, quoting King, supra at 243, 247. "[I]nitial disclosures of sexual assault" are "often frightening and traumatic for victims," and information about "observations of the complainant," "the timing of the complaint," and the complainant's "motivation for disclosing the assault to the particular person told and in the particular circumstances" allows the jury "to make a fairer and more accurate assessment of the validity of that accusation." King, supra at 245-247.

Accordingly, "[i]t is the alleged victim's first complaint, the point at which the accusation first surfaced, that is the most pertinent to the jury's understanding of what motivated the victim to come forward and is the most useful in assessing the victim's credibility" (emphases added).  Id. at 243.

Here, Britt's diary entry did not provide insight into the circumstances surrounding her decision to come forward -- primarily because she had not yet come forward at the time she wrote the entry.  Rather, like many diaries, Britt's was a private document intended for her eyes only.[2]  Most diaries become public only if they are lost or stolen, or if the writer decides to share or publish it.  Britt did not mention her diary to anyone until after the police investigation began, and her diary entry offered no traditional first complaint information about how her disclosure of abuse arose, the timing of that complaint, or her motivations for coming forward.

An actual first complaint could have been admitted in this case.  The Commonwealth initially moved in limine to designate Margot as the first complaint witness, based on Britt's report

---

[2] Britt made her expectations regarding privacy clear on a note affixed to the diary's cover, which read:  "Please don't Read This.  [I]t was not made for you to read.  [It's] made for me and my thoughts.  Not your eyes and opinions."

of sexual assault to her in mid-November 2019.[3] After the defendant then notified the Commonwealth that a witness might suggest Britt and Margot had fabricated the allegations, however, the Commonwealth changed course and sought to admit the diary entry as both first complaint evidence and a prior consistent statement. In effect, the Commonwealth maintained that both the diary entry and Britt's disclosure to Margot should come in as first complaint evidence -- notwithstanding the general rule that only evidence concerning the first complaint may be admitted and subsequent disclosures are inadmissible under that doctrine. See Commonwealth v. Stuckich, 450 Mass. 449, 456 & n.9 (2008); King, 445 Mass. at 242-243.

Ultimately, neither Britt nor Margot testified on direct examination about Britt's disclosure to Margot. Instead, the judge admitted a copy of Britt's diary entry as the first complaint evidence, and during her testimony Britt read the entry to the jury and affirmed that it was "an accurate description of what had occurred." As a general rule, a complainant may "testify to the details of the first complaint (i.e., what the complainant told the first complaint witness)" only "if a first complaint witness or a 'substitute' complaint

---

[3] According to representations by the Commonwealth, Margot would have testified that she asked Britt whether the defendant was "hurting" and "touching" her, and Britt answered "yes." After that exchange, Margot called the police.

witness . . . is produced at trial who testifies regarding the complaint," and the defendant is able to cross-examine both. King, 445 Mass. at 245 & n.24. See Commonwealth v. Cruz, 98 Mass. App. Ct. 383, 386-387 (2020), quoting Commonwealth v. Peters, 429 Mass. 22, 30 n.8 (1999) ("victim may not 'bootstrap her testimony solely with her own account of statements made to others'").[4] Nevertheless, no first complaint witness testified here.

In allowing Britt's diary entry in evidence, the judge stated that "there's no question under the case law that . . . [the] first complaint does not have to be an oral complaint, and . . . a written complaint can serve as the first complaint." It is certainly true that a written or otherwise recorded communication may qualify as the first complaint, and "a live witness is not required." Mass. G. Evid. § 413 note (2023). Accordingly, we have upheld the introduction of written communications as first complaint evidence. See Commonwealth v. Gonzalez, 103 Mass. App. Ct. 74, 78-79 (2023) (Facebook messages to cousin that he read); Commonwealth v. Holguin, 101 Mass. App.

---

[4] In Cruz, we held that the fact that "no first complaint witness testified" was one of several errors that supported reversal of the defendant's conviction. Cruz, 98 Mass. App. Ct. at 384, 386-387. Although it is true that Cruz "did not involve a recorded but untransmitted complaint," see post at note 4, that is because the first complaint doctrine had not previously been applied to such recordings.

Ct. 337, 340 (2022) (text messages closely followed by in-person conversation with mother); Commonwealth v. Revells, 78 Mass. App. Ct. 492, 497 (2010) (letter written at mother's request during initial verbal disclosure). We have not, however, extended the doctrine to encompass writings never communicated to another person. That is because an uncommunicated writing does nothing to "surface" an accusation of sexual assault. See King, 445 Mass. at 243. See also Restatement (Second) of Torts § 559 comment a (1977) ("The word 'communication' is used to denote the fact that one person has brought an idea to the perception of another").

To be sure, Britt's diary might have been admitted in evidence for other reasons. See Arana, 453 Mass. at 221-222 (first complaint doctrine "does not . . . prohibit the admissibility of evidence that, while barred by that doctrine, is otherwise independently admissible"). If inconsistent with her testimony at trial, statements in the diary could have been used to impeach her credibility. See Commonwealth v. Cogswell, 31 Mass. App. Ct. 691, 698 (1991); Mass. G. Evid. § 613(a)(2) (2023). Conversely, if the defendant had claimed that Britt's testimony was the result of a recent contrivance, prior consistent statements in her diary could have been admitted to rebut that claim, if they were made before she supposedly had a motive to fabricate. See Mass. G. Evid. § 613(b)(2). No such

claim had been made, however, at the time the diary entry was admitted.

Prior consistent statements are generally inadmissible because "the testimony of a witness in court should not need -- and ought not -- to be 'pumped up' by evidence that the witness said the same thing on some prior occasion."  Commonwealth v. Kindell, 44 Mass. App. Ct. 200, 202-203 (1998).  See Commonwealth v. Novo, 449 Mass. 84, 93 (2007), citing 4 J. Wigmore Evidence § 1124, at 225 (Chadbourn rev. ed. 1972) ("the statement of a witness is not made more trustworthy by repeating it"); Mass. G. Evid. § 613(b)(1) (2023).  In King, the Supreme Judicial Court cited the rule on the limited admissibility of prior consistent statements in rejecting the "contention that the existing rules of evidence provide an adequate remedy with which to combat" such stereotypes.  King, 445 Mass. at 240-241. See Tome v. United States, 513 U.S. 150, 157-158 (1995) (Federal Rule of Evidence 801[d][1][B], which follows traditional common law of evidence on prior consistent statements, "speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told").  Instead, the court in King intended the first complaint doctrine to be a distinct and limited exception to the ordinary rules of evidence, designed to address concerns unique to sexual assault cases.  See King, supra at 218-219.  In so doing, it anticipated that the testimony of first complaint

witnesses would assist juries "in determining whether to credit the complainant's testimony." Id. The court also contemplated only one narrow exception to its rule that first complaint evidence be limited to the testimony "of one witness -- the first person told of the assault." See id. at 243-244 (judge may allow "one other complaint witness to testify" where "the first person told of the alleged assault is unavailable, incompetent, or too young to testify"). We see no reason to expand the doctrine crafted in King and its progeny to encompass concerns addressed by other evidentiary rules.

We are also concerned that allowing noncommunicative writings to serve as first complaint evidence could disrupt the fair and efficient adjudication of future sexual assault cases. The Commonwealth likely benefited in this case from the diary entry's being admitted as the first complaint evidence, because it was detailed and expressive whereas Britt's actual first complaint to Margot was less so. But that will not always be the case. Because only the first complaint may be admitted and subsequent disclosures are generally inadmissible, Stuckich, 450 Mass. at 456, in any case where an alleged victim kept a diary or journal, even a single vague or poorly phrased entry could be cited by a defendant as a reason to preclude the admission of an actual disclosure by the alleged victim to another person. In such cases, the Commonwealth would not be able to "pick and

choose" among different first complaint evidence "to locate the one" that is likely to be most effective. Commonwealth v. Murungu, 450 Mass. 441, 446 (2008). Furthermore, diaries and journals are not always intended to be reliable accounts of fact,[5] and requiring judges to assess the timing and intent underlying an alleged victim's private writings, in addition to the victim's communications with others, would make decisions about the admissibility of first complaint evidence more fraught and fact-specific than they already are. See Aviles, 461 Mass. at 72-73.

Because we conclude that the admission of the diary entry as first complaint evidence was error, we must also address whether that error was prejudicial. See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005). "The importance of maintaining a balance between the interests of a complainant (who still may be a child) 'in having her credibility fairly judged on the specific facts of the case' and the interests of a defendant 'in receiving a trial free from irrelevant and potentially prejudicial testimony' cannot be overstated." Aviles, 461 Mass.

---

[5] See, e.g., Joan Didion, On Keeping a Notebook, in Slouching Towards Bethlehem 133 (1968) ("So the point of my keeping a notebook has never been, nor is it now, to have an accurate factual record of what I have been doing or thinking"); Susan Sontag, Reborn:  Journals and Notebooks, 1947-1963 165 (2008) (journal "does not simply record my actual, daily life but rather -- in many cases -- offers an alternative to it").

at 73, quoting Arana, 453 Mass. at 228.  Accordingly, first complaint evidence is limited to prevent improper bolstering and cumulative evidence.  See Arana, supra at 228-229; King, 445 Mass. at 243.  At oral argument, the Commonwealth acknowledged that the complex facts and strategic decision-making by counsel in this case make it difficult to determine what would have happened had the diary entry not been admitted as first complaint evidence.  It is clear, however, that the defense's theory was that Britt fabricated the allegations and continued to lie leading up to trial, and there is no dispute that her diary entry provided a more detailed account of the defendant's alleged conduct than Margot would have provided as a first complaint witness.  Although a defendant is usually provided some protection against undue prejudice by the opportunity to cross-examine the first complaint witness, the defendant was unable to do so here.  See King, supra at 245.  In her closing argument, the prosecutor emphasized that "the last time [the alleged abuse] happened [Britt] wrote the day after in her diary" and that her diary entry was consistent with her testimony at trial.

Unfortunately, the prejudice to the defendant was only compounded by the modified limiting instruction that the judge gave when the diary entry was admitted and in the final charge.  Stating that "we allow evidence of the first occasion the

complainant told of the alleged assault" (emphasis added), the modified instruction indicated that the diary entry was a "telling" of the alleged assault, even though it was not. See King, 445 Mass. at 243 (first complaint witness is "the first person told of the assault"). The modified instruction further misled the jury by referring to the diary entry as a "report" of sexual assault and allowing the jury to evaluate Britt's testimony based on the short "length of time" between it and "the alleged crime." The instruction was not consistent with the evidence heard by jurors and may have misled them to believe that a report had been communicated. The instruction also improperly allowed the jury to consider the contemporaneous nature of Britt's diary entry as a factor that corroborated her testimony, even though, as discussed, the timing of an uncommunicated diary entry has no bearing on the underlying goals of the first complaint doctrine.

Because we cannot say that no prejudice resulted from the erroneous admission of the uncommunicated diary entry as first complaint evidence, see Arana, 453 Mass. at 228, the defendant's convictions must be vacated.

2. Remaining claims. "We review the defendant's additional claims of error to provide guidance to the extent that they may resurface at any new trial." Commonwealth v. Troche, 493 Mass. 34, 51 (2023). See Commonwealth v. Carter,

488 Mass. 191, 192 (2021).  The defendant also raises claims that the judge abused her discretion by allowing Britt to testify to how she understood certain text messages sent by the defendant; by applying the rape shield statute, G. L. c. 233, § 21B, to exclude evidence supporting the defense theory that Britt fabricated her allegations; and by failing to sufficiently confirm defense counsel's representation that the defendant waived his right to testify in his own defense.[6]

a.  Defendant's text messages.  The defendant argues that allowing Britt to testify to the meaning of a 2019 text message exchange between herself and the defendant was improper, because she lacked personal knowledge of his intended meaning.

The Commonwealth introduced a screenshot of the exchange, which read (verbatim and with spelling uncorrected) as follows:

| | |
|---|---|
| Defendant: | "How much to do somthing for me" |
| Britt: | "do what" |
| Defendant: | "U know" |
| Britt: | "not tonight" |
| Defendant: | "Ok<br>"Never mind" |
| Britt: | "ok" |

___

[6] We need not address the defendant's claim that the judge abused her discretion by denying his motion for a mistrial based on Margot's testimony about other instances of sexual abuse in the family, "as the unique facts underlying this claim are unlikely to repeat."  See Commonwealth v. Rodriguez, 92 Mass. App. Ct. 774, 782 n.14 (2018).

> Defendant:    "Please
> "5 min"

Britt testified that she "knew what he meant" because "that's the only thing he would pay me for." She "just wanted to hear him say it." These messages were "more vague than his normal text messages" in which, when he asked her to do chores, he would "make sure to state it" by saying, for example, "You need to clean the bunny cage." The jury saw many examples of such messages from the defendant. The jury could reasonably infer (although Britt did not explicitly state) that, in the messages quoted above, she understood the defendant to be requesting sexual contact.

Lay witnesses may testify when "evidence is introduced sufficient to support a finding that they have personal knowledge of the matter about which they are testifying." Commonwealth v. Harbin, 435 Mass. 654, 657 (2002). See Mass. G. Evid. § 602 (2023). A witness with personal knowledge of the meaning of a text message may opine as to that meaning. See United States v. Santiago, 62 F.4th 639, 649-650 (1st Cir. 2023). Compare Commonwealth v. Blanchard, 88 Mass. App. Ct. 637, 641 (2015), S.C., 476 Mass. 1026, 1029 (2017) (witness properly barred from testifying to meaning of text message where she lacked personal knowledge).

Britt had personal knowledge of the defendant's intended meaning, as shown by the defendant's reply, "U know," when Britt asked what he wanted her to do.  The judge properly allowed Britt to testify to what she "knew" the defendant wanted her to do.  The defendant's argument that other text messages in evidence did not support Britt's interpretation went to the weight of her testimony, not its admissibility.  See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 313 (2019).

b.  Application of rape shield statute.  The defendant sought to show that Britt was motivated to fabricate her allegations by her desire to escape the defendant's strict rules and be free to spend time with boys.  To that end, after Britt denied fabricating the allegations and testified that she "didn't really care about boys," the defendant sought to impeach her with her diary entries referring to performing oral sex on boys.  The judge ruled that such questions were barred by the rape shield statute, G. L. c. 233, § 21B, and the defendant argues that this ruling was an abuse of discretion.[7]

_____

[7] Prior to trial, the judge ruled that the diary contained much irrelevant information and would not be admitted in its entirety, but that if the defendant wished to offer specific parts of the diary at trial, the judge would rule on them at that time.  The defendant thus errs in suggesting that the judge categorically barred the use of any diary entries other than the one admitted as first complaint evidence.

The rape shield statute generally prohibits the admission of "[e]vidence of specific instances of a victim's sexual conduct" at trials concerning certain sexual offenses.  G. L. c. 233, § 21B.  However, if specific instances of such conduct are relevant to show bias or motive to lie, the evidence may be admissible despite the statute.  See Commonwealth v. Parent, 465 Mass. 395, 405 (2013).  In such circumstances, the judge "must determine whether the weight and relevance of the proffered evidence outweighs its prejudicial effect on a victim" and retains broad discretion to "limit and control the scope of cross-examination . . . once the jury have been adequately exposed to the issue of bias" (quotations and citations omitted).  Commonwealth v. Mountry, 463 Mass. 80, 86 (2012).

The defendant here was given wide latitude to explore Britt's motives.  This included cross-examination about (1) the defendant's strictness regarding boys, chores, and school attendance, (2) diary entries describing Britt's attending social events with boys, and (3) Britt's first date with her new boyfriend.  The defendant also offered in evidence several photographs of Britt and the boyfriend being affectionate with each other at Margot's house.  Further, the defendant elicited from Margot that on one occasion, after seeing Britt and her boyfriend together, Margot had sent a text message to Britt about "[]holding to [Margot's] expectations" while living in

Margot's house.[8]  The judge could reasonably conclude that the jury had been adequately exposed to evidence of Britt's motive to lie and that the value to the defense of introducing diary entries about consensual oral sex with boys would not outweigh the prejudice to Britt and to the values served by the rape shield statute.[9]

c.  Defendant's right to testify.  The defendant finally argues that the judge, before accepting counsel's representation that the defendant waived his right to testify in his own defense, should first have asked the defendant directly whether he had consulted with counsel and what decision he had made. The defendant does not, however, argue that he wished to testify but was prevented from doing so or that he would have made any different choice if the judge had further inquired.  There was no error.[10]

---

[8] The judge acted within her discretion in excluding a further message in which Margot told Britt, "i dont wanna catch yall all ovr eachother like that again."

[9] The defendant also claims the judge improperly excluded a photograph of condoms in Britt's bedroom.  But that photograph's admissibility was left unresolved by the motions in limine, and the defendant never offered it at trial.  The judge thus never excluded it, although doing so would have been within her discretion.  See Commonwealth v. Gentile, 437 Mass. 569, 582-583 (2002).

[10] With regard to waiver of the right to testify, a judge is "entitled to rely on trial counsel's representations made in the presence of his client and to which his client did not object." Commonwealth v. Garvin, 456 Mass. 778, 786-787 (2010), quoting

Conclusion.  We vacate the judgments of convictions, the

verdicts are set aside, and the case is remanded for a new

trial.

So ordered.

---

Commonwealth v. Smith, 456 Mass. 476, 481 (2010).  Moreover, we previously rejected the defendant's proposed rule requiring that a judge engage in a colloquy with a defendant before accepting a waiver of the right to testify.  See Commonwealth v. Hennessey, 23 Mass. App. Ct. 384, 388-390 (1987).

SACKS, J. (dissenting).  I respectfully disagree that the judge abused her discretion by admitting Britt's diary entry as first complaint evidence.  Although nothing in Commonwealth v. King, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006), expressly contemplates first complaint evidence in a form other than witness testimony, neither does King or any other decision foreclose it.  To the contrary, "post—King jurisprudence . . . [made it] apparent that trial judges need[ed] greater flexibility to deal with the myriad factual scenarios that arise in the context of purported first complaint evidence."  Commonwealth v. Aviles, 461 Mass. 60, 72 (2011).  Thus, "[r]ather than considering the first complaint doctrine as an evidentiary 'rule,' it makes greater sense to view the doctrine as a body of governing principles to guide a trial judge on the admissibility of first complaint evidence."  Id. at 73.

> "The judge who is evaluating the facts of a particular case is in the best position to determine the scope of admissible evidence, keeping in mind the underlying goals of the first complaint doctrine, our established first complaint jurisprudence, and our guidelines for admitting or excluding relevant evidence."

Id.  We review such decisions for abuse of discretion.  Id.

Here, Britt's account of a sexual assault by the defendant -- recorded in writing before any other disclosure, but not transmitted to a third person until after Britt's disclosure to her sister -- served the purposes of first complaint evidence

and caused no unfair prejudice to the defendant.  In no way did the judge's decision to admit the diary entry "fall[] outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  Nor did the judge's limiting instructions -- which were necessarily (if not perfectly) adapted from the model first complaint instruction to reflect that the complaint here was a writing -- cause the defendant any prejudice, contrary to the majority's suggestion.  Ante at   .  Because I would not disturb the judge's first complaint ruling, I would affirm the judgments.[1]

1.  First complaint.  a.  Goals of the doctrine.  The judge's decision advanced the goals of the first complaint doctrine, which are "to 'refute any false inference that silence is evidence of a lack of credibility on the part of [sexual assault] complainants,' . . . and 'to give the jury as complete a picture as possible of how the accusation of sexual assault first arose.'"  Aviles, 461 Mass. at 72, quoting King, 445 Mass. at 243, 247.

The majority elevates the doctrine's second goal to controlling status, while giving virtually no weight to the first.  Ante at   .  That is, the majority focuses almost

---

[1] I agree with majority on the defendant's remaining claims, and I see no abuse of discretion in the judge's denial of the defendant's motion for a mistrial.  Ante at   .

exclusively on the perceived shortcomings of an uncommunicated diary entry in giving a picture of how the sexual assault accusation first "arose," while ignoring the value of the diary in refuting the myth that earlier "silence" means the complainant is now fabricating.  Even if an untransmitted complaint may not give "as complete a picture" as a transmitted complaint, King, 445 Mass. at 247, surely an untransmitted complaint that comes first in time -- here, the day after the latest assault -- does more to rebut the assumption that the complainant is lying than does an oral complaint made at some later time -- whether months (as here) or years after the fact -- when the complainant finds the courage to tell another person of the assault.[2]  The majority does not allow for the flexibility announced in Aviles, but holds that only the later, transmitted complaint is admissible.  Cf. Commonwealth v. Murungu, 450 Mass. 441, 446 (2008) (Commonwealth may not "pick and choose" among various complaint witnesses to locate "most effective" witness; ordinarily, only "first" complaint is admissible).

    i.  Picture of how accusation arose.  The first complaint doctrine originated in the old English common-law requirement

---

[2] I thus do not agree with the majority that "the timing of an uncommunicated diary entry has no bearing on the underlying goals of the first complaint doctrine," ante at    , or that the judge erred in instructing that the timing of the entry could be considered when determining Britt's credibility, id. at    .

that a victim make immediate "hue and cry to arouse the neighborhood," Commonwealth v. Bailey, 370 Mass. 388, 394 n.7 (1976), and that, if she did not, it was "in effect an assertion that nothing violent had been done" (quotation and citation omitted), King, 445 Mass. at 228-229. However, we no longer require a "cry" to "arouse the neighborhood," Bailey, supra. We do not insist that, to be admitted as first complaint evidence, an account of a sexual assault must be transmitted to another person so as to lead to an investigation (or pursuit) of the defendant. Thus, a statement to a cousin was the proper "first" complaint even though it did not name the defendant as the perpetrator, which occurred only in a complaint to police two years later. See Commonwealth v. Asenjo, 477 Mass. 599, 600, 602-603 (2017). A statement to a brother was the proper first complaint even though no complaint was made to police until nine years later. See Commonwealth v. Wallace, 76 Mass. App. Ct. 411, 414 (2010). So, although Britt's diary entry did not constitute a "cry" or prompt an investigation of the defendant, it could still serve as the first complaint.

The majority concludes otherwise because in its view a diary entry provides no information about the complainant's motivation for disclosure or the timing of the complaint. Ante at . Yet here, Britt's diary entry explained at the outset what prompted her to write about the defendant's most recent

sexual assault: "It had been so long I thought it was over. I thought because I had grown up, he wouldn't do it again, but I guess growing up makes it worse."

In any event, such metadata about the motivation and timing of a complaint is rarely included in the body of the complaint itself; such information is more likely to come out through the complainant's testimony, just as it did here. Britt testified on direct examination about why she kept a diary (primarily, to cope with her depression) and when it was that she wrote the key entry. And defense counsel cross-examined her, as the majority describes, to raise doubts about when she had written various diary entries and whether she wrote "stories" and falsified notes excusing her absences from school.

Defense counsel could have gone further, to cross-examine Britt about the circumstances in which she disclosed the existence of the diary, which happened during her recorded forensic interview, four days after her disclosure to Margot. Indeed, as a matter of logic, testimony about the disclosure of a previously untransmitted complaint should always be available, providing the fodder for cross-examination that the majority says is required.[3] Here, however, counsel cross-examined Britt

---

[3] For a recorded but previously untransmitted complaint to be introduced in evidence at all, its existence must first become known to the prosecution, either through a disclosure by the complainant herself or through a third party's discovery

only briefly about her disclosure of the diary entry, and counsel did not seek to play an excerpt of the interview recording to show Britt's demeanor when she did so.  That was counsel's choice, not any inherent inability of previously untransmitted first complaint evidence to show "how the accusation of sexual assault first arose."  King, 445 Mass. at 247.

ii.  Refuting false inference of lack of credibility.  The majority gives no weight to how a diary entry serves the other main goal of first complaint evidence:  to refute the "false inference that silence is evidence of a lack of credibility." Aviles, 461 Mass. at 72, quoting King, 445 Mass. at 243. Although this belief about the expected behavior of sexual assault victims is "outmoded," concerns remain that jurors will be skeptical of sexual assault allegations and may draw an adverse inference absent a corroborative complaint.  King, supra at 229-230.  First complaint evidence addresses the continued need to "counterbalance or address inaccurate assumptions regarding stereotypes about delayed reporting of a sexual assault or about sexual assault victims in general."  Id. at

_____

(for example, by finding the complainant's diary).  The first person other than the complainant to learn of the complaint may testify to the attendant circumstances, including the complainant's demeanor where applicable, subject to the usual discretionary balancing of probative value against unfair prejudice.

240.  A written but untransmitted complaint of sexual assault fully serves this goal.

Sexual assault victims "respond in a variety of ways to the trauma of the crime."  King, 445 Mass. at 237.  Thus, King did away with "the promptness requirement [which] places the imprimatur of the court on the misimpression that most 'real' victims raise an immediate 'hue and cry.'"  Id. at 242.  Barring use of a record of a sexual assault like Britt's diary entry, merely because it was not contemporaneously transmitted to another person, only reinforces "the very misunderstanding[] the rule aims to counteract," that a complainant who did not raise an immediate hue and cry is not a "real" victim.  Id.

Notwithstanding the majority's suggestion, ante at    , the absence of a first complaint witness does not make the complaint inadmissible.  Although King, 445 Mass. at 243-244, 245 n.24, had stated (with narrow exceptions not relevant here) that the complainant could testify to the details of the complaint only if a first complaint witness also testified, more recent decisions, consistent with the flexibility introduced by Aviles, 461 Mass. at 72, have shown that when a complainant's record of a sexual assault is introduced as first complaint evidence, there is no requirement that a witness also testify to the receipt of that record.  See Commonwealth v. Gonzalez, 103 Mass. App. Ct. 74, 78-79 (2023) (screenshot of victim's Facebook

messages admitted; recipient did not testify); Commonwealth v. Lewis, 91 Mass. App. Ct. 651, 661-662 (2017) (victim's G. L. c. 209A affidavit admitted; victim witness advocate who assisted victim in "filling out the paperwork" did not testify); Commonwealth v. Lyons, 71 Mass. App. Ct. 671, 672 (2008) (recording of victim's 911 call admitted; 911 operator did not testify).[4]  Thus, as the Massachusetts Guide to Evidence now recognizes, "a communication entirely in writing may qualify as the first complaint. . . .  [A] live witness is not required." Mass. G. Evid. § 413 note (2026).[5]

---

[4] Our decision in Commonwealth v. Cruz, 98 Mass. App. Ct. 383, 386-387 (2020), cited King for the proposition that a victim could not testify about her first complaint to another person unless that other person also testified as the first complaint witness.  Cruz, however, involved a designated first complaint witness who inexplicably did not testify.  See id. at 386 & n.4.  It did not involve a recorded but untransmitted complaint, nor did we discuss our earlier decisions in Lewis, 91 Mass. App. Ct. at 661-662, and Lyons, 71 Mass. App. Ct. at 672, in which recorded and transmitted complaints were admitted without the testimony of the recipient.  See Cruz, supra at 386-387.

[5] The Supreme Judicial Court has recognized that "[i]f, in fact, [a] letter was the first complaint, that is the end of the matter.  The letter would be the first complaint evidence and the further disclosures are not admissible as first complaint evidence."  Commonwealth v. Stuckich, 450 Mass. 449, 456 (2008). The court did not, however, address whether the recipient of the letter would have been required to testify about it.  See id. at 456 n.9.  Our court has held that a documentary account of a sexual assault may also be admitted as part of a "tightly intertwined oral and written" first complaint to another person. Commonwealth v. Holguin, 101 Mass. App. Ct. 337, 340 (2022) (victim's text messages to mother, followed by conversation with her).  See Commonwealth v. Revells, 78 Mass. App. Ct. 492, 497

Formerly, a complainant could not testify to the details of her own first complaint -- or, as the court once put it, could not "bootstrap her testimony solely with her own account of statements made to others." Commonwealth v. Peters, 429 Mass. 22, 30 n.8 (1999). But that limitation was abolished in King itself, 445 Mass. at 245 (overruling Peters, supra). Thus, that no witness testified about Britt's eventual disclosure of the diary entry during her forensic interview did not bar the entry from serving as the first complaint. The diary entry was powerful evidence to rebut the "stereotypical assumption[] . . . that the absence of a timely complaint suggests fabrication of the assault." King, supra at 240.

The probative value of a written complaint of sexual assault should not turn on fine distinctions concerning the complainant's communicative intent. A complainant who writes such a complaint in a diary and then hands it to a third party with a request to "read this" has clearly made a complaint. See Commonwealth v. Stuckich, 450 Mass. 449, 456 (2008). So has a complainant who hands over the diary while omitting the request. A complainant might also (1) leave the diary where a sympathetic family member or friend is likely to find it; or (2) hide it where a parent nevertheless finds it, as Britt herself had done

---

(2010) (letter written at mother's request after victim unable to verbally articulate complaint).

here;[6] or (3) send it by regular (or electronic) mail to a friend, only to have it returned because the address is insufficient; or (4) address an entry to "friends and family," believing they would someday read it and thereby learn of the assault, as Britt in fact did here.[7]  The corroborative value of the diary will vary little from one of these scenarios to the next.  A judge should have the discretion to treat each of them as a first complaint.  See Aviles, 461 Mass. at 72-73.

b.  Similarity to prior consistent statements.  As King and other decisions have recognized, the first complaint doctrine bears close similarity to the rule that a witness's prior consistent statement may be admitted to rebut a claim "of recent contrivance."  Mass. G. Evid. § 613(b)(2) (2023).[8]  See King, 445

---

[6] At Britt's voir dire she testified that, a year or two before she made the diary entry at issue here, the defendant and Britt's mother had found the diary, were disturbed by some of the entries, and talked to Britt and arranged for her to see a therapist.  Britt then simply hid the diary in a different place and kept writing.

[7] Although the cover of Britt's diary asked others not to read it, she changed her mind in the months following the entry at issue here.  In the last entry Britt made, she wrote, "Dear friends and family, if you have read up to this point you know I didn't have it easy. . . .  I've been sexually abused and verbally abused by my father since 5th grade. . . .  I'm sorry I couldn't be successful or be the person you all wanted me to be but I'll just tell you all one thing, I tried."  That entry was not admitted in evidence.

[8] As more fully stated in § 613(b)(2):

Mass. at 229.  See also Aviles, 461 Mass. at 69-70; Commonwealth v. McCoy, 456 Mass. 838, 856 (2010) (Marshall, C.J., concurring).  The two concepts differ in that a prior consistent statement is admissible only if and when the opposing party claims the witness's testimony reflects a recent contrivance, whereas the first complaint doctrine recognizes that jurors may come into the court room assuming the complainant's testimony reflects a recent contrivance, and thus jurors are entitled at the outset to hear evidence of an earlier complaint.  But the two concepts are otherwise alike; each of them allows the jury to use the prior statement only to assess the witness's credibility and, in so doing, to consider the circumstances of the prior statement and any discrepancies between it and the witness's current testimony.  See Instruction 3.660 of the Criminal Model Jury Instructions for Use in the District Court (2017) (first complaint); Instruction 3.700(II) of the Criminal Model Jury Instructions for Use in the District Court (2013) (rehabilitation by prior consistent statement).  Nothing in King rejects the analogy between prior consistent statements and

---

"If the court makes a preliminary finding that there is a claim that the witness's in-court testimony is the result of recent contrivance or a bias, and the prior consistent statement was made before the witness had a motive to fabricate or the occurrence of the event indicating a bias, the evidence may be admitted for the limited purpose of rebutting the claim of recent contrivance or bias."

first complaint evidence, and nothing in the majority's discussion casts doubt on the analogy.[9] Ante at    .

Why is the analogy significant?  Because a prior consistent statement need not have been transmitted to a third party to be admissible.  Handwritten notes that a witness has created to aid her memory will qualify.  See Commonwealth v. Novo, 449 Mass. 84, 92-93 (2007); Commonwealth v. Andrews, 403 Mass. 441, 454-455 (1988).  Importantly, so will a victim's undated letter, addressed to her father but hidden in her closet and never sent, describing how he had sexually abused her.  See Commonwealth v. Healey, 27 Mass. App. Ct. 30, 32-36 & n.2 (1989).

The same should be true when a recorded but untransmitted statement is offered as first complaint evidence rather than as a prior consistent statement.  Just as King recognized with respect to delayed complaints to others, that a recorded complaint was not transmitted when made, but came to light only

---

[9] The first complaint doctrine is "an exception to the usual rule that a prior statement of a witness concerning a material fact that is consistent with the witness's trial testimony may only be admitted on redirect examination" (citation omitted). King, 445 Mass. at 241 n.21.  It is this aspect of the prior consistent statement rule that led the court in King to "reject any contention that the existing rules of evidence provide an adequate remedy with which to combat [juror] stereotypes," and to affirm the continuing need to admit such prior consistent statements preemptively, as first complaint evidence.  Id. at 240-241.  "[D]elaying testimony about the existence of the prior complaint until after the defendant has damaged the victim's credibility . . . can cause unwarranted prejudice to the Commonwealth."  Id. at 241.

later, "is not a reason for excluding" it, but is "simply one factor the jury may consider in weighing the complainant's testimony."  King, 445 Mass. at 242.

c.  Risk of unfair prejudice and other concerns.  Admitting a diary entry or other untransmitted account of a sexual assault as first complaint evidence creates no greater risk of unfair prejudice to the defendant than do other forms of first complaint evidence.  The majority suggests that, because an untransmitted complaint has no recipient, admitting it as the first complaint will unfairly deprive the defendant of the opportunity to cross-examine what would otherwise be a first complaint witness.  The defendant will thus be unable to explore the complainant's demeanor, the circumstances in which the complaint was received, and any discrepancies between the complainant's and recipient's memories of it.

But the absence of a first complaint witness was apparently not viewed as problematic in the cases admitting as first complaint evidence the complainant's Facebook messages, G. L. c. 209A affidavit, or recorded 911 call, even though such complaints were immediately transmitted and there was no showing that their recipients were unavailable.  See Gonzalez, 103 Mass. App. Ct. at 78-79; Lewis, 91 Mass. App. Ct. at 661-662; Lyons, 71 Mass. App. Ct. at 672.  In light of those decisions, I see no reason why a defendant would be any more prejudiced by the

absence of a first complaint witness where, as with Britt's diary, the complaint was not contemporaneously transmitted to anyone.  In any event, the complainant may still be cross-examined about the veracity of the first complaint, about any discrepancies between it and her in-court testimony, and about the circumstances in which she disclosed its existence.  And the defendant retains the right to call one or more complaint witnesses to challenge the Commonwealth's evidence of how the complaint arose.  See Murungu, 450 Mass. at 447 (defendant may call more than one complaint witness).

I do not share the majority's concern that allowing recorded but untransmitted writings as first complaint evidence will pose new and complicated questions about whether a vague or poorly phrased writing constitutes a complaint.  Ante at    . Existing standards are just as applicable to such statements as to any other type of first complaint evidence.  See, e.g., Murungu, 450 Mass. at 446 (not complaint when victim expresses only "unhappiness, upset or other such feelings, but does not actually state that she has been sexually assaulted"); Commonwealth v. Rivera, 83 Mass. App. Ct. 581, 584-585 (2013) (disclosure of general physical abuse not complaint; only "first disclosure of specifically sexual abuse" qualifies).

Nor is there any reason to think that recorded but untransmitted complaints are inherently less trustworthy than

more typical first complaint evidence. Questions about when the complaint was memorialized are no different in principle from questions about which complaint was the "very 'first' complaint." King, 445 Mass. at 243. A diary entry may be dated or undated, just as, in the case of an oral complaint, the complainant and a proffered first complaint witness may have the same or different memories about when their conversation occurred. Such issues are resolved, as they were here, through a voir dire.[10] See Stuckich, 450 Mass. at 454-455 (where evidence contradictory, voir dire required to determine which complaint was first).

In sum, by applying the first complaint doctrine as a rigid rule, the majority limits trial judges' discretion under Aviles, 461 Mass. at 72-73, and unnecessarily deprives jurors of a "complete . . . picture" of the circumstances bearing on the complainant's credibility. King, 445 Mass. at 247. Both the risks of prejudice from using a recorded but untransmitted statement of a sexual assault as first complaint evidence, and

---

[10] Any concern that a complainant might have backdated a recorded complaint may be explored at voir dire and at trial. But few if any complainants are likely to know the first complaint doctrine so as to tailor their own evidence to fit. Cf. Healey, 27 Mass. App. Ct. at 36 n.7 (upholding admission of victim's unsent letter describing sexual abuse as prior consistent statement; court would not "assume an elaborate scheme" by victim and others to fabricate such evidence).

the preliminary questions raised by allowing such use, are also present in other forms of first complaint evidence and can be addressed by the same means.  Here, the judge "carefully and thoroughly" considered the admissibility of Britt's diary entry and did not abuse her discretion in admitting it as the first complaint.  Aviles, 461 Mass. at 73.

For the foregoing reasons, I would affirm the judgments.